UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | Civil Action No. 1:15-cv-1342 |
| | ) | |
| Plaintiff, | ) | Judge Patricia A. Gaughan |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP address 76.190.140.193, | ) ) ) | **DEFENDANT'S MOTION TO QUASH SUBPOENA TO THIRD-PARTY TIME WARNER CABLE** |
| Defendant. | ) | |

Now comes the Defendant, John Doe subscriber assigned IP address 76.190.140.193, by and through undersigned counsel, Larry W. Zukerman, Esq., and Brian A. Murray, Esq., and respectfully moves this Honorable Court, pursuant to Fed.R.Civ.P. 45(d)(3)(A), to quash the subpoena issued by Plaintiff's counsel that requires third-party, Time Warner Cable, to produce documents identifying the name and address of the individual who was assigned an IP address of 76.190.140.193 on May 17, 2015 at 17:45:31 UTC, as said subpoena was issued primarily for the purposes of harassing and intimidating the Defendant into paying a settlement and is not reasonably calculated and/or likely to lead to the discovery of the actual identity of the alleged anonymous John Doe copyright infringer, as more fully set forth in the Brief in Support, attached hereto and incorporated herein.

Respectfully Submitted,

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (0029498)
BRIAN A. MURRAY, Esq. (0079741)
Zukerman, Daiker & Lear, Co., L.P.A.
3912 Prospect Ave., East
Cleveland, Ohio 44115
(216) 696-0900 telephone
(216) 696-8800 facsimile
Counsel for John Doe Defendant

## BRIEF IN SUPPORT

### I. STATEMENT OF THE CASE

This case appears to be another in a long line of similar copyright infringement cases commenced across the United States by Plaintiff's attorney, Yousef M. Faroniya, against John Doe defendants. Federal Judges, including Judges from the Northern and Southern District of Ohio have criticized Plaintiff's counsel and noted that he has engaged in "abusive activity" and that he and pornographic production companies like the Plaintiff "misus[e] the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlements, rather than ultimately serve process and litigate claims." *Breaking Glass Pictures v. Does*, 2013 U.S. Dist. LEXIS 143839, *11-13 (N.D. Ohio).

In a September 3, 2013 opinion, the Honorable Greg White stated "there are signs that Plaintiff's counsel [Yousef M. Faroniya] is engaging in the kind of 'litigation abuses' that the *Malibu Media LLC* decision expressed concerns about, namely that a plaintiff is using the court and the discovery process to 'pick off' individual John Does, for confidential settlements, while not being serious about proving its claims." *Breaking Glass Pictures v. Does*, 2013 U.S. Dist. LEXIS 143839, *16 (N.D. Ohio).

In a May 26, 2015 opinion involving Yousef M. Faroniya and Malibu Media, the Honorable Timothy S. Black stated that "Malibu Media continues to flaunt the procedural rules and uses the Court's subpoena power as leverage to extort settlements . . . ." *Malibu Media, LLC v. Ryan Ramsey,* Case No. 1:14-cv-718, Doc. #15, PAGEID #: 92 (Attached as Exhibit 1). Judge Black condemned Malibu Media as a "copyright troll", which he noted has been defined by other courts as "an owner of a valid copyright who brings an infringement action not to be made whole, but rather as a primary or supplemental revenue stream." *Id*. at PAGEID #: 85. Judge

2

Black noted that despite Malibu Media filing over sixty (60) cases in the Southern District of Ohio in a twelve (12) month period time, not a single case ever progressed to a Rule 26(f) conference. *Id.* at PAGEID #: 84. Instead, Malibu Media voluntarily dismissed most cases pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after it used the third-party subpoena to obtain a settlement. *Id.*

Just as other federal courts have quashed subpoenas issued by Yousef M. Faroniya and/or Malibu Media and/or other production companies, so too should this Honorable Court because the subpoena issued by Yousef M. Faroniya to Time Warner in this matter is for the purpose of compelling the defendant to settle a meritless suit simply to avoid becoming publicly associated with pornographic files.

In the present matter, the Plaintiff has filed a Complaint on July 3, 2015 alleging a copyright infringement cause of action against John Doe, an internet subscriber ostensibly assigned IP address 76.190.140.193. Plaintiff's Complaint and the exhibits attached to the Complaint allege that the IP address 76.190.140.193 was used to illegally distribute sixty-two (62) pornographic movies that Plaintiff owned the copyrights for. The names of the movies listed on exhibit B of Plaintiff's Complaint contain names such as "Retro Romp", "Fuck Me More", "Deep Down In Me", "Tiffany's Tight Ass", "High School Dropouts", "Her First Time", etc. Due to the "sensitive nature" of Plaintiff's allegations in the Complaint, this Honorable Court *sua sponte* issued a protective order on July 13, 2015 that prohibits the Plaintiff from publicly identifying and/or disclosing the John Doe Defendant's name and/or other identifying information absent a further order of the Court.

On July 13, 2015 this Honorable Court also issued an order granting Plaintiff Leave to Serve the third-party subpoena to Time Warner Cable requesting the name and address of the

3

individual who was assigned the IP address identified in the Complaint. Said Order however, stated that "Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint." As Plaintiff and Plaintiff's counsel have a well documented history of not serving subpoenas like the one in the present matter for the purpose of protecting and enforcing Plaintiffs' rights, this Honorable Court should quash the subpoena issued by Plaintiff's counsel.

## II. MALIBU MEDIA, LLC'S HISTORY AS A 'PORNOGRAPHY COPYRIGHT TROLL' INTENT ON ABUSING THE PROCESS OF THE FEDERAL COURTS IN ORDER TO HARASS INTERNET SUBSCRIBERS INTO SETTLING CASES.

Plaintiff Malibu Media, LLC is very definition of a 'pornography copyright troll' who "file[s] copyright infringement claims in order to induce rapid settlements against large groups of anonymous defendants without the intention of proceeding to trial on the merits." Luke S. Curran, Copyright Trolls, Defining the Line Between Legal Ransom Letters and Defending Digital Rights: Turning Piracy into a Business Model or Protecting Creative from Internet Lawlessness?, 13 J. MARSHALL REV. INTELL. PROP. L. 170, 172 (2013) [hereinafter "Curran, Copyright Trolls"].

Lawsuits filed by 'pornography copyright trolls' "are not filed with an actual hearing in mind; [instead, they] are filed to take advantage of court ordered discovery to break the veil of anonymity that separates IP addresses from the account information of actual human beings." Matthew Sag, Copyright Trolling, An Empirical Study, 100 IOWA L. REV. 1005, 1109 (2015). Once this identifying information is obtained, the 'pornography copyright troll' proceeds not with discovery and/or trial preparation, but instead with sending threatening and/or harassing letters to the identified IP addressee in hopes that the addressee will cave in and settle instead of expending the financial resources associated with defending him or herself in such a matter. *Id.*

at 1109-10. Thus, "the discovery orders that link IP addresses to personal individual information are little more than a judicially sanctioned hunting license." *Id.* at 1135. Of note is the fact that "the association [of these lawsuits] with pornography is far from coincidental . . . the potential embarrassment of being accused (accurately or not) or downloading such material is a great motivation to settle." *Id.* at 1110.

Malibu Media, LLC is not the first 'pornography copyright troll,' but, in the past few years, Malibu Media, LLC has become the undisputed nationwide leader, by sheer volume, in the filing of these very dubious lawsuits. The original copyright trolls, such as the various plaintiffs represented by Prenda Law, have fallen by the wayside due to their abusive litigation practices, which led a federal judge in California to order financial sanctions against Prenda Law in an amount in excess of $80,000.00, in addition to reporting Prenda Law's practices to the U.S. Attorney's Office, IRS-Criminal Investigation Division, and federal and state bars. *Ingenuity 13 LLC v. John Doe*, Case No. 2:12-cv-8333, Doc. #130 (C.D. CA May 6, 2013) (attached as Exhibit 2). In a cleverly written homage to Star Trek, U.S. District Court Judge Otis D. Wright II included the following summary in his Order Issuing Sanctions against Prenda Law:

> Plaintiffs have outmaneuvered the legal system. They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single porno video. Then they offer to settle – for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright law originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.
>
> Plaintiffs do have a right to assert their intellectual-property rights, so long as they do it right. But Plaintiffs' filing of cases using the same boilerplate complaint against dozens of defendants raised the Court's alert. It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to battlestations.

> \*\*\*
>
> Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. <u>But their deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.</u>

*Id.* at 1-2. 5 (emphasis added).

Malibu Media, LLC, by and through local attorneys such as Yousef Faroniya, Esq., has rushed to fill the void left by Prenda Law and its clients. In 2012, Malibu Media, LLC filed 333 suits, with 27.82% of those suits constituting 'pornography copyright' suits against John Doe defendants. In 2013, this number rose to 1,022 suits, 64.71% being 'pornography copyright' suits against John Doe defendants. In 2014, Malibu Media filed another 821 suits, with 85.97% of this number being 'pornography copyright' suits against John Doe defendants. Sag, <u>Copyright Trolling</u>, at 1132, Table 2.

Furthermore, "Malibu Media, LLC, mirroring Prenda Law, has employed an almost duplicative predatory practice with few alterations . . . [and it has] fine-tuned the sue-to-settle business model." Curran, <u>Copyright Trolls</u>, 188, 192. Moreover,

> [A]s evidenced by their litigious nature, the objectives of companies like Malibu Media are not to go through discovery and the entire litigation process . . . . Instead, Malibu pursues an ancillary rapid-settlement business model by filing against an insurmountable number of John Does, inundating the courts and depriving them of the necessary revenues to operate.

*Id.* at 193.

The tactics of Malibu Media, LLC, and Attorney Faroniya, have followed a very familiar pattern in its John Doe 'pornography copyright troll' lawsuits:

1. Use a sliver of evidence as the basis for suit and move for early discovery.

6

[At which point, defendant is notified by his ISP of suit.]

2. Wait for defendant or his counsel to initiate contact and inquire about a settlement.
[Defendant is then notified of the statutory maximum and Plaintiff's willing[ness] to settle for the minimum. Defendant is now faced with three choices: 1) financial ruin if he loses; 2) financial ruin and humiliation is he litigates; 3) fight.]

3. If no settlement agreement is reached, amend the complaint to name the defendant.
[Defendant, regardless of guilt, must now contend with the stress that friends, family or employers may stumble across this public filing.]

4. Move to extend the time to complete service repeatedly.
[This serves two purposes in hoping to facilitate settlement: 1) to hang the suit over defendant's head; and 2) to draw out defendant's litigation expenses.]

5. Serve the defendant. If [the] defendant does not default, move on to discovery.

6. Discovery tactics include: 1) move to extend the time to complete expert reports repeatedly; 2) depose neighbors.
[Again, the extensions are to draw out the litigation. The depositions are to publicly shame a defendant.]

7. Voluntarily dismiss the matter at any point before trial.

*Malibu Media, LLC v. John Doe subscriber assigned IP address 65.189.10.120*, No. 1:14-cv-493, Doc. #40, PAGEID #: 571-572 (S.D. Ohio Aug. 27, 2015) (attached as Exhibit 3).

If this Honorable Court allows Plaintiff Malibu Media, LLC, by and through its designated Ohio counsel, to obtain the identity of Defendant, this Court can be assured that Plaintiff will engage in the exact same coercive and abusive tactics, described above, in the instant matter. Therefore, for the reasons set forth below, Defendant respectfully requests that this Court grant Defendant's Motion to Quash Subpoena to third-party Time Warner Cable.

7

**III.     THIS COURT MUST QUASH THE SUBPOENA DIRECTED TO THIRD-PARTY TIME WARNER CABLE BECAUSE ALLOWING PLAINTIFF TO OBTAIN DEFENDANT'S IDENTITY WOULD PRESENT AN UNDUE BURDEN UPON DEFENDANT, SUBJECT DEFENDANT TO CALCULATED HARASSMENT AND RIDICULE FROM PLAINTIFF, AND IT WOULD NOT LEAD TO PLAINTIFF OBTAINING THE IDENTITY OF THE ACTUAL COPYRIGHT INFRINGER.**

On the same date that Plaintiff filed its Complaint in the instant matter (July 3, 2015), Plaintiff also filed a Motion for Leave to Serve a third-party Subpoena on Time Warner Cable to discover the name and address of Defendant. Under Fed.R.Civ.P. 26(d), discovery may not begin prior to the Rule 26(f) conference in a case; however, Rule 26(d) also provides that expedited discovery may be conducted prior to a Rule 26(f) conference when authorized by a court order. This Court issued such an Order on July 13, 2015. On July 14, 2015, Plaintiff's attorney, Yousef Faroniya, issued a subpoena to third-party Time Warner Cable requesting the name and address of the internet subscriber assigned the IP address 76.190.140.193 on May 17, 2015 at 17:45:31. On September 11, 2015 Time Warner Cable sent a letter to Defendant informing him/her of the issued subpoena and notifying Defendant that Time Warner Cable would be required to comply with the subpoena unless Defendant files a Motion to Quash by September 25, 2015. Defendant timely files this Motion to Quash the Subpoena directed to third-party Time Warner Cable.

In the instant matter, this Court should quash the subpoena because compliance with the subpoena would not reveal the identity of the actual copyright infringer, but would instead present an undue burden upon Defendant as the subpoena would be issued primarily for the purpose of harassment and ridicule and would be used solely to try to coerce a settlement from the Defendant, rather than risk being publicly named in a lawsuit involving pornography. A court must quash a subpoena when the subpoena:

8

>    (i) fails to allow a reasonable time to comply;
>
>    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
>    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
>    (iv) <u>subjects a person to undue burden</u>.

Fed.R.Civ.P. 45(d)(3)(A) (emphasis added). Additionally, when evaluating a motion to quash, a court should consider "whether (i) <u>the subpoena was issued primarily for purposes of harassment</u>, (ii) there are other viable means to obtain the same evidence, and (iii) the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008) (emphasis added). Furthermore, if the information sought under the subpoena is relevant and sought for good cause, "then the subpoena should be enforced <u>unless</u> the documents [or information] are privileged or <u>the subpoenas are unreasonable, oppressive, annoying, or embarrassing</u>." *Id.* at *3 (emphasis added).

Defendant has standing to quash the subpoena issued to third-party Time Warner Cable because Defendant has a "personal right or privilege" with regard to the information sought – his/her own name and address. *Malibu Media, LLC v. John Doe subscriber assigned IP address 65.25.29.69*, Case No. 1:14-cv-02744 (N.D. Ohio Mar. 23, 2015) (Defendants in Defendant's situation have "at least a minimal privacy interest in the information requested by the subpoena. Although this interest is 'exceedingly small,' it constitutes '*some* personal right or privilege' in the information sought, thus giving John Doe standing to seek to quash the subpoena.").

In cases similar to the instant matter, courts nationwide have either quashed subpoenas to third-party internet providers and/or vacated early discovery motions that were previously

granted because obtaining the identity of the internet subscriber does not necessarily lead to obtaining the actual identity of the alleged copyright infringer. As Judge Howard R. Lloyd of the Northern District of California explained,

> [T]he subpoena is only the first step in a lengthy extra-judicial investigation that may or may not lead to naming any Doe defendants in this lawsuit. In response to a subpoena, the ISP produces the identity and contact information of the subscriber associated with a particular IP address. This subscriber may be the infringer who participated in the swarm, or he may just be the person who pays for internet access in a given household. Multiple people may, and often do, use a single ISP subscription – family members, roommates, guests, or other individuals (unknown to the subscriber) who access the internet using any unprotected wireless signals they can find. [Thus,] [t]he named ISP subscriber may or may not be the infringer. . . . It is abundantly clear that plaintiff's requested discovery is not 'very likely' to reveal the identities of the Does defendants. . . . Accordingly, because plaintiff has not shown that the requested discovery is at all likely to uncover the identity of the Doe defendants, its application for leave to take expedited discovery must be denied.

*Hard Drive Productions, Inc. v. Does 1-90*, Case No. C11-03825, Doc. #18, at *4-5, 6 (N.D. CA Mar. 30, 2012) (attached as Exhibit 4). Similarly, Judge Otis D. Wright II of the Central District of California also explained,

> The Court is concerned with the potential for discovery abuse in cases like this. Ingenuity 13 accuses the Doe Defendant of illegally copying a pornographic video. But the only information Ingenuity 13 has is the IP address of the Doe Defendant. An IP address alone may yield subscriber information. But that will only lead to the person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger. . . . [T]he Court is reluctant to allow any fishing-expedition discovery when all a plaintiff has is an IP address – the burden is on the plaintiff to find other ways to more precisely identify the accused infringer without causing collateral damage.

*Ingenuity 13 v. John Doe*, Case No. 2:12-cv-8333, Doc. #28, PAGEID #: 331-332 (C.D. CA Dec. 20, 2012) (attached as Exhibit 5). Additionally, Judge R. Gary Klausner of the Central District of California further explained,

> Where the defendants' identities are unknown and the plaintiff seeks early discovery, the threshold inquiry is whether the requested early discovery is 'very

> likely' to reveal the identities of the Doe defendants. . . . Plaintiff alleges because ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve defendants and proceed with the case. . . .
>
> Plaintiff's argument is unavailing, because the subscriber information is not a reliable indicator of the actual infringer's identity. Due to the proliferation of wireless internet and wireless enabled mobile computing (laptops, smartphones, and tablet computers), it is commonplace for internet users to share the same internet connection, and thus, share the same IP address. Family members, roommates, employees, or guests may all share a single IP address and connect to BitTorrent. . . . If the subscriber has an unsecured network, it is possible that the actual infringer could be a complete stranger standing outside the subscriber's home, using the internet service and who's internet activity is being attributed to the unknowing subscriber's IP address. Thus, obtaining the subscriber information will only lead to the person paying for the internet service and not necessarily the actual infringer.
>
> \*\*\*
>
> Accordingly, granting early discovery for the subscriber information is not very likely to reveal the identifies of Defendants.
>
> \*\*\*
>
> Based on the foregoing, Plaintiff fails to show that early discovery is very likely to reveal the identities of Defendants and fails to demonstrate good cause to warrant early discovery. Thus, the Court **DENIES** Plaintiff's Motion [for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference]."

*Malibu Media, LLC v. John Does 1-10*, Case No. 2:12-cv-01642, Doc. #32, PAGEID #: 225-226 (Oct. 10, 2012) (attached as Exhibit 6). As in the above-listed cases, revealing to Plaintiff the identity of Defendant in the instant matter is only likely to reveal the identity of the internet subscriber, not the actual copyright infringer. Thus, because revealing the identity of Defendant is not very likely to reveal the identity of the actual copyright infringer, this Court should quash the Motion served on third-party Time Warner Cable.

Courts have also quashed subpoenas to third-party internet providers and/or vacated early discovery motions that were previously granted because the plaintiff failed to demonstrate that it

11

had "good cause" to obtain the identity of the John Doe defendant through early discovery; instead, the courts determined that the plaintiffs sought such early discovery solely in order to harass the defendant into accepting a settlement instead of actually serving the defendant and properly litigating the case. Thus, compliance with such a subpoena placed an undue burden on the defendant. In a recent copyright trolling case where current Plaintiff's counsel, Yousef Faroniya, represented a different media company, Magistrate Judge Greg White of the Northern District of Ohio stated the following in granting a motion to quash the subpoena served on a third party:

> BitTorrent suits usually never reach the trial stage because most BitTorrent litigation ends in an out of court settlement. The controversial practice of coercing settlement in other BitTorrent cases necessitates caution by this Court. It is no secret that many of these suits end after discovery and are 'resolved without so much as an appearance by the defendant, usually through default judgment or stipulated dismissal.' <u>Courts have been troubled by what amounts to be a new business model employed by production companies 'misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims.' . . . It is in this environment where courts must take every caution to ensure that the keys to the doors of discovery are not blithely given to parties with other intentions.</u>
>
> \*\*\*
>
> <u>This Court finds that Plaintiff's counsel [Yousef Faroniya] has engaged in precisely such abusive activity.</u> Counsel has filed at least twenty-eight other similar actions in the Northern District of Ohio. Expedited discovery has been allowed to proceed in fifteen of those cases. Notably, not a single John Doe defendant has been served in *any* of these actions. While discovery has been only recently permitted in some, Plaintiff's counsel had ample time to conduct the requested expedited discovery and serve named defendants in several cases but declined to do so. . . . <u>From this activity, it is apparent that Plaintiff, represented by same counsel as in the above cases, has no intention of actually litigating this matter.</u>

*Breaking Glass Pictures v. Does 1-99*, 2013 U.S. Dist. LEXIS 143839, 9-16 (N.D. Ohio Sept. 3, 2013) (emphasis added). Courts in the Southern portion of Ohio have observed the exact same

improper conduct by Malibu Media, LLC (represented by Yousef Faroniya). In issuing a *sua sponte* Order to Show Cause for Malibu Media, LLC's extreme delay in filing its summons return and making a misrepresentation to the court, Judge Timothy S. Black of the United States District Court for the Southern District of Ohio stated,

> The Court does not view Malibu Media's conduct in this action in isolation. Rather, the Court views it as <u>part of an unmistakable pattern</u> that has emerged in other actions before this Court and in context of observations made by multiple other federal judges in cases involving Malibu Media.
>
> This Court has observed the conduct of Malibu Media, LLC and its counsel of Record [Yousef Faroniya] in over 60 cases filed in this District in the past twelve months. This is not the first case in which Malibu Media has filed a summons return well after the date of service. Nor is it the only case in which counsel appears to have made a misrepresentation in seeking an extension of time to complete service. <u>The Court also issued an order to show cause after counsel publicly filed a defendant's name in direct violation of two orders unambiguously ordering counsel to file that information under seal</u>.
>
> Malibu Media asserts that it is necessary to invoke the Court's subpoena power to 'propound discovery in advance of a Rule 26(f) conference.' (Doc. 2 at 4). However, <u>not a single one of these 60 cases has ever progressed to a Rule 26(f) conference</u>. In fact, most cases are voluntarily dismissed by Malibu Media pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after Malibu Media has used the third-party subpoena power to obtain settlement. . . . <u>In the few cases such as this in which a defendant has appeared with counsel, counsel have raised numerous allegations of impropriety and abusive litigation tactics</u>. The Court is not blind to the reality that these allegations likely substantially underrepresent the amount of misconduct that goes unreported by defendants who simply pay Malibu Media's settlement demand rather than face the prospect of expensive and extensive litigation regarding their purported interest in pornography.
>
> The Court is aware that Malibu Media, through separate local counsel, has filed thousands of similar cases in federal courts across the country. A copyright troll has been defined as 'an owner of a valid copyright who brings an infringement action not to be made whole, but rather as a primary or supplemental revenue stream.' . . . Under this definition, Malibu Media certainly qualifies. . . .
>
> \*\*\*
>
> <u>[T]he Court will not sit idly by as Malibu Media continues to flaunt the procedural rules and uses the Court's subpoena power as leverage to extort</u>

> settlements, while not proceeding to a Rule 26(f) conference in any of the over 60 actions before this Court.

\*\*\*

> Malibu Media is hereby advised that the Court proposes to dismiss this action with prejudice pursuant to Rule 41(b) for failure to prosecute and failure to comply with the Federal Rules of Civil Procedure based on, *inter alia*, Malibu Media's unexplained delay in filing its summons return and for making a misrepresentation in support of its second motion for an extension of time.

*Malibu Media, LLC v. Ryan Ramsey*, Case No. 1:14-cv-718, Doc. #15, PAGEID #: 83-85, 92, 96. (May 26, 2015) (attached as Exhibit 1). Echoing the sentiments of Judge Black in *Malibu Media, LLC v. Ryan Ramsey*, Judge Lloyd in *Hard Drive Productions, Inc. v. Does 1-90* emphatically stated,

> [T]his Court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent other caught up in the ISP net). Plaintiff seeks to enlist the aid of the court to obtain information through the litigation discovery process so that it can pursue a non-judicial remedy that focuses on extracting 'settlement' payments from persons who may or may not be infringers. This [] court is not willing to do that.

*Hard Drive Productions, Inc. v. Does 1-90*, Case No. C11-03825, Doc. #18, at * 11, (N.D. CA Mar. 30, 2012) (attached as Exhibit 4).

This Honorable Court should follow the lead of Judges Black, Lloyd, Klausner, and Wright, and refuse to allow Plaintiff Media Media, LLC, and its designated Ohio counsel Yousef Faroniya, to abuse the Court's subpoena power to harass Defendant into paying a settlement in exchange for avoiding the costly expense of defending himself in this highly dubious matter, especially since it is very likely that Defendant was only the internet subscriber, not the actual copyright infringer who used Defendant's IP address to allegedly obtain copyrighted material.

14

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Honorable Court quash the Subpoena directed to third-party Time Warner Cable, pursuant to Fed.R.Civ.P. 45(d)(3)(A).

Respectfully Submitted,

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (0029498)
BRIAN A. MURRAY, Esq. (0079741)
Zukerman, Daiker & Lear Co., L.P.A.
3912 Prospect Avenue, East
Cleveland, Ohio 44115
(216) 696-0900
Counsel for John Doe Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was sent via electronic service through the Court's CM/ECF system to the following:

Yousef M. Faroniya, Esq.
The Law Office of Yousef Faroniya
84 S. 4th Street
Columbus, Ohio 43215
(614) 360-1855
yousef@ymfincorporated.com

/s/ Larry W. Zukerman, Esq.
Larry W. Zukerman, Esq.
Brian A. Murray, Esq.
Counsel for John Doe Defendant
